# Birmingham Ry. L. & P. Co. *v.* Landrum.

*Action for Personal Injury.*

(Decided Dec. 19, 1907. 45 So. Rep. 198.)

1. *Negligence;* *Infant; Contributory Negligence; Presumption of Capacity.*—Prima facie a child between seven and fourteen years ·of age is presumed incapable of possessing judgment and discretion sufficient to render it guilty of contributory negligence; this presumption is rebuttable however.

2. *Appeal; Assignment of Error; Waiver.*—Errors not insisted upon in argument or brief will be considered as being waived.

3. *Trial; Objections to Evidence; Necessity for Stating Grounds.*—Where no grounds of objection are stated to a question such objection is properly overruled.

4. *Trial; Instructions.*—A charge asserting that if a person has sufficient age, judgment and ·discretion to know the danger of going on the track without stopping and looking for approaching cars,

[Birmingham Ry. L. & P. Co. v. Landrum.]

such person could not recover, pretermits the question of his act approximately contributing to his injury and for this reason is defective.

5. *Street Railways; Contributory Negligence; ιnfants; Failure to Stop, Look and Listen.*—It is not the ability to appreciate danger which might render a child between seven and fourteen years of age responsible for acts of contributory negligence; such responsibility is based upon a maturity and discretion beyond its years. It cannot, therefore, be based upon the sole fact that such child was of sufficient age and discretion to know the danger of going upon a railroad track without stopping, looking and listening for approaching cars.

6. *Trial; Instructions Unintelligible.*—It is not error to refuse a charge containing words rendering it unintelligible.

7. *Same; Ignoring Evidence.*—Where there was testimony tending to show that plaintiff listened for approaching cars before going upon the track a charge in effect asserting that he failed to do so not only ignores evidence but is invasive of the province of the jury.

8. *Carriers; Station Tracks; Passengers; Duties.*—While the duty is on the passengers to exercise ordinary care for safety, in making his egress or ingress to and from the station over the tracks, he may assume that the tracks between the place where he alights and the station will be kept safe while he is crossing, which duty rests upon the carrier, and the mere failure to look and listen for approaching cars before attempting to cross will not as a matter of law constitute contributory negligence on passenger's part if struck while crossing.

9. *Same; Evidence.*—The fact that the car was running from six to ten miles an hour when it struck plaintiff and that it ran two or three car lengths after striking him is admissible as bearing upon the company's negligence.

10. *Same; Contributory Negligence; Jury Question.*—Under the facts in this case it was a question for the jury as to whether or not the alighting passenger was guilty of contributory negligence in crossing the tracks in the manner employed by him.

11. *Trial; Misleading Instructions.*—Where the evidence showed that plaintiff was injured at a station where the car from which he had alighted had stopped, or so near the station that the motorman in charge of the approaching car which struck plaintiff was not relieved of the duty to give signals, a charge which asserts that the motorman was not bound to give such signal except when passing or about to pass another car, was misleading in its tendencies and properly refused.

12. *Street Railways; Passing Cars; Duty of Operative; Customs.*—The fact that it was the custom not to give signals or to reduce the speed of cars when approaching and passing one another will not excuse the company for its mortorman's negligence in failing to give such signals or reduce the speed of the cars.

13. *Carriers; Passengers; Action for Personal Injury; Instructions.*—A charge asserting that if a passenger alighted before the car

13 R

reached the station and while it was in motion such passenger could not recover was improper as under such charge passenger could not recover for injuries if he alighted just before the car stopped and while moving very slowly.

14. *Trial; Instructions Misleading.*—Charges which are misleading in their sentences and which are involved, either or both, may be refused without error.

15. *Same; Instructions; Issues.*—Where the complaint charged that the servants were guilty of wanton or intentional misconduct a charge asserting that the jury was not authorized to find from the evidence that the defendant was guilty of wanton or intentional conduct was properly refused.

16. *Words and Phrases; Wantonness.*—Wantonness consists in the doing or failing to do an act with reckless indifference or disregard of the natural or probable consequences with the consciousness from the knowledge of existing circumstances and conditions that such conduct will probably result in injury, without intention to inflict the injury.

17. *Carriers; Wanton Negligence; Speed of Passing Cars.*—To run a car at a high rate of speed on passing or entering a station where another car on the adjoining track had stopped or was about to stop to discharge passengers will support a charge of wanton misconduct.

APPEAL from Birmingham City Court.

Heard before Hon. Charles A. Senn.

Personal injury action by Porter Landrum against the Birmingham Railway, Light & Power Company. From a judgment for plaintiff, defendant appeals. Affirmed.

There is no assignment of error calling in question the action of the court on the pleading. The first and third counts are in simple negligence. The second count was in wanton or willful injury. The defense was the general issue and contributory negligence by going upon the track without first stopping, looking, and listening for approaching cars. The evidence tended to show that the plaintiff was a minor about 11 years old; that he had ridden on defendants' electric car line from the end of the line to what is known as "Tenth Street" or "Car Barn" station; that he alighted from the car he was on, and crossing behind it, and stepped onto the adjoining track, and was struck by a car on that track running in

an opposite direction from the car from which he had alighted; that he had not paid his fare on the car, but had money with which to do it. He had been sent to a drug store, which was at the next stopping place, but got off before arriving at his destination and while the car was slowing up for Tenth Street station, some distance from the usual stopping place. The rate of speed at which the car was running when he got off was in dispute, as was the evidence as to whether the car which struck him gave signals of warning as it approached and passed the car on which plaintiff had been riding. The evidence further tended to show that plaintiff jumped off the rear platform of the car and immediately ran or walked across the track behind the car on which he was riding and onto the track where he was struck by a freight car. It also tended to show that the plaintiff lived on electric car lines, and crossed them daily in going to and from school, and always stopped and looked and listened for the car, or stopped and listened for the car when he could not see it before going on the track. Some of plaintiff's witnesses testified that he traveled on the cars at that time, and that they supposed he was able to take care of himself as any little boy his age, and that he had intelligence to know how to travel by himself on the street car. The mother testified that he was just a common, ordinary boy at the time he got hurt, that he was able to take care of himself on the cars by himself. The plaintiff himself testified that he always kept away from cars when they were coming, and that whenever he came to a car track he would look up and down a track to see if one was coming, and if he could not see he would stop and listen; that he walked across the track behind the car, walking slowly, and heard no warning, listening all the time; that he did not stop while he was walking, and could not see on the

other track; that there was two or three feet between the tracks, and the cars extended over the tracks some; that he could not see until he had gotten around the edge of the passing car, and was then near about the other track when the freight car hit him at once; that when he got to the side of the car on which he was riding next to the other track he did not look down the track toward Birmingham; that he looked at the track, but did not look either up or down, but that he stopped and listened, because he knew it was dangerous to get on the track if another car was coming. The defendant's evidence tended to show that the plaintiff swung off the car he was riding on when it was about 60 feet from the usual stopping place, and ran behind it onto the track on which the freight car was approaching, and was struck by it. The evidence was in conflict as to the speed of this car.

The following charges were refused to the defendant: "(1) If the jury find, from the evidence, that the plaintiff at the time of his injury had sufficient age, judgment, and discretion to know and appreciate the danger of going on defendant's track without stopping and looking for the approach of cars thereon, the jury cannot find for the plaintiff under the third count of the complaint. (2) If the jury find, from the evidence, that the plaintiff had sufficient age, discretion, and judgment to know and appreciate the danger of going upon the track of defendant without stopping, looking, and listening for approaching car, and if the jury further find, from the evidence, that defendant's freight trip was running at not exceeding half its usual speed between stations as it passed the passenger car, then the jury must find for the defendant. (3) If the jury believe, from the evidence, that the plaintiff at the time he was struck by the car of defendant had ceased to be a passenger of defend-

ant, then the jury must find that the plaintiff was not entitled to an observance of the custom of the defendant's employes to give warning of the car approaching another standing car on the adjoining track, or to reduce its speed or stop opposite it. (4) The plaintiff, if the jury find that at the time he was hurt he was capable of being guilty of negligence, would not be excused from stopping, looking, and listening before going on defendant's track for cars on it, by reason of the existence of a custom on the part of defendant's employes to give signals of warning when approaching and passing moving cars on the adjoining tracks. (5) If the jury believe, from the evidence, that at the time of the injury to plaintiff the plaintiff had sufficient age, judgment, and discretion to know and appreciate the danger of going upon defendant's railroad track without stopping and looking and listening for the approach of cars thereon, the jury must find for defendant. (6) If the jury believe the evidence, they must find from it that plaintiff was guilty of negligence which proximately contributed to his injuries. (7) The law imposes no duty on the motorman on defendant's freight trip in the matter of giving signal, except when the freight trip was passing or about to pass another car of defendant. (8) If the jury believe the evidence, they must find from it that the plaintiff at the time of his injury had sufficient age, judgment, and discretion to know and appreciate the danger of going upon defendant's track without stopping, looking, or listening for approaching cars. (9) Unless the jury find, from the evidence, that it was the custom and practice on defendant's railroad, at the time plaintiff was hurt, for its motorman to give signals of warning and to reduce speed or stop when approaching or passing cars on the adjoining track, which was standing or moving along it, the jury must find for the

defendant. (10) If the jury find, from the evidence, that plaintiff got off the passenger car before it reached the station at Tenth street, or the car barn, and while the car was in motion, the jury must find for the defendant. (11) If the jury believe, from the evidence, that the plaintiff got off defendant's car before it reached the regular stopping place, and if the jury find, from the evidence, that the custom or practice to give signals of warning when passing a standing car, and to reduce speed or stop opposite the standing car, existed at the time plaintiff was hurt, and was for the benefit altogether of passengers alighting from the standing car, and if the jury further find, from the evidence, that the plaintiff got off the car at such point to save himself from paying fare, then the plaintiff is not entitled to complain of the violation of such practice or custom, if the jury find, from the evidence, it was violated by defendants' servants." (12) General affirmative charge. (13, 14, and 15) Affirmative charges as to the first, second, and third counts. "(16) The jury are not authorized to find, from the evidence, that defendant is guilty of wanton or intentional negligence. (17) If the jury find, from the evidence, that the plaintiff was injured while crossing defendant's track at a point east of the regular station or stopping place, then the defendant would not owe him the duty to cause its freight trip of cars to be brought to a standstill opposite the passenger car while it was standing at the station. (18) If the jury find from the evidence that the passenger car was not standing still, but was moving when the freight trip passed it, then it was not the duty of defendant to have reduced the speed of its freight trip, or to have brought it to a standstill opposite the passenger car. (19) The jury are not authorized to find, from the evidence, that it was the duty of defendant's motorman on the freight

[Birmingham Ry. L. & P. Co. v. Landrum.]

trip to give signals when approaching the passenger car, if the passenger car was also moving when the freight trip passed it."

TILLMAN, GRUBB, BRADLEY & MORROW, for appellant. The court erred in refusing charge 1 requested by appellant.—*Central of Ga. Ry. Co. v. Foshee*, 125 Ala. 199; *Bir. Ry. L. & P. Co. v. Oldham*, 141 Ala. 195. The court erred in refusing charge 3 refused to appellant.—*L. & N. R. R. Co v. Marke*, 103 Ala. 106; *L. & N. R. R. Co. v. Hall*, 87 Ala. 708; *N. C. & St. L. R. R. Co. v. Hembree*, 85 Ala. 481; *A. G. S. R. R. Co. v. Hawks*, 72 Ala. 112. The court erred in refusing charge 4 requested by the appellant.—*Bir. Ry. L. & P. Co. v. Oldham, supra; A. G. S. R. R. Co. v. Roach*, 110 Ala. 271; *L. & N. R. R. Co. v. Mothershed*, 97 Ala. 268; *Railroad Co. v. Houston*, 95 A. S. 697. The court should have given charges 6 and 8 requested by appellant.—*Worthington & Co. v. Goforth*, 124 Ala. 126; *N. A. C. & I. Co. v. Beacham*, 140 Ala. 422. Counsel discuss other assignments of error but cite no authority in support thereof.

BOWMAN, HARSH & BEDDOW, for appellant. Charge 1 requested by appellant was properly refused.—*B. R. L. & P. Co. v. Jones*, 41 South. 148; *Cent. of Ga. Ry. Co. v. Foshee*, 125 Ala. 199; *M. & C. R. R. Co. v. Martin*, 131 Ala. 269. Charges 6 and 8 were properly refused. —141 Ala. 148; *Pratt C. & I. Co. v. Brawley*, 83 Ala. 371; *Government St. Ry. Co. v. Hanlon*, 53 Ala. 70; *Tutwiler C. C. & I. Co. v. Enslen*, 129 Ala. 346. Charge 7 was properly refused.—*L. & N. R. R. Co. v. Anchors*, 22 South. 279; *Bir. South. R. R. Co. v. Powell*, 136 Ala. 232. Charge 11 was an argument. Charge 16 was bad.

—*City Delivery Co. v. Henry,* 139 Ala. 161. Counsel discuss other assignments of error, but cite no authority.

HARALSON, J.—This was an action by plaintiff, a boy who was about 2 months over 11 years of age. It is well settled, that a minor between 7 and 14 years of age is prima facie incapable of exercising judgment and discretion, but evidence may be received to show capacity. —*B. R. L. & P. Co. v. Jones,* 146 Ala. 277, 41 South. 148; *T. C. C. & I. Co. v. Enslen,* 129 Ala. 345, 30 South. 600. In the latter case it was said: "Contributory negligence may, under some conditions, be imputed to an infant under 14 years of age, as a matter of law, as where the evidence of his care and prudence and his capacity to exercise judgment and discretion is not in conflict, and different inferences cannot be drawn therefrom. The fact, however, that the infant was shown to be 'bright, smart and industrious,' without more, is not sufficient to overcome the presumption of want of discretion which his age prima facie implies; for, an infant may be all this and yet be so wanting in judgment and discretion as to make him rash and imprudent."

There were no assignments of error on any question of pleading. We take them up as made.

The second, third and fourth assignments are not argued in brief of appellant, and will be treated as waived. —*B. R. L. & P. Co. v. Oldham,* 141 Ala. 200, 37 South. 452.

The first assignment has reference to the action of the court in overruling defendant's objection to a question asked witness Matthews. Defendant stated no ground of objection to the question, and the court below could not be compelled to hunt for grounds.—*L. & N. R. R. Co. v. Banks,* 132 Ala. 489, 31 South. 573.

[Birmingham Ry. L. & P. Co. v. Landrum.]

Charge 1, asked and refused to defendant, ignores consideration of whether or not plaintiff's action proximately contributed to his injury.—*Jones' Case,* 146 Ala. 277, 41 South. 148. Furthermore, the charge is faulty in that it fixes the liability of a child for contributory negligence, though only about 11 years old, solely upon the hypothesis, that he "had sufficient age, judgment and discretion to know and appreciate the danger of going upon defendant's track, without stopping and looking for the approach of cars thereon." It is not the ability to know or even appreciate danger which might make a child, between 7 and 14 years old, responsible for contributory negligence, but it must be a maturity and discretion beyond its years, which would lead it to take care. It should have been as blameworthy as a person over 14 years ordinarily is. This, as a matter of law, cannot be affirmed of the plaintiff.

For the same reason, the second and fifth charges were properly refused. A child of 11 might appreciate the danger that he would be in, if he neither stopped, looked or listened, when he could not appreciate the danger, if he was conscious that he was listening, but did not stop. It may be assumed as a fact, that most persons do not think that ordinary care requires them to stop in crossing a street car track, while they would admit the necessity of looking and listening with reasonable diligence.

Charge 3, refused for defendant, is unintelligible, in the use of the word "just," which warranted the court in refusing it.

The fourth charge predicates that, at the time plaintiff was hurt, he was capable of being guilty of negligence, and assumes that he did not stop, look and listen. Besides the plaintiff testifies, and his evidence is undisputed, that he did listen, which the charge implies

he did not do, and in this respect it was misleading. It also misleads in that, plaintiff's negligence, if guilty of any, would not be excused by the negligent failure of defendant's servants to observe their usual precautions. The place where the injury occurred was at a station, where the cars were in the habit of stopping for persons to get on and off the train. Under such circumstances, the carrier owes them a duty, that while making their egress they be not struck by other passing trains, and while a passenger is not absolved from the duty of exercising care for his safety, he has a right to presume that the tracks intervening between the place where he is to alight, and the station, will be kept safe while he is crossing; so that the mere fact that he fails to look and listen for an approaching train before attempting to cross, will not, as a matter of law, be ascribed to his contributory negligence, and will not prevent a recovery of damages if he is struck by such a train.—2 Thompson on Negligence, § 2705.

The evidence of the defendant tended to show that the freight car that struck plaintiff, was moving at the time 6 or 8 miles an hour as one witness testified, and that it was running 8 or 10 miles an hour as testified by another; an other, that it ran 8 or 10 miles, and ran two or three car lengths after it struck plaintiff. In considering plaintiff's negligence, all such facts are to be considered.

Charges 6 and 8 were properly refused. The sixth, because as a matter of law it asserts that the plaintiff was guilty of contributory negligence—a question clearly for the jury under all the evidence.

Charge 7 was properly refused. The principle asserted was calculated to mislead the jury, since the evidence shows that the boy was injured at the station, where the car from which he alighted stopped, or so near to the

station, as not to have relieved defendant's servant of the duty of giving signals of the approach of the freight car that injured him.

The ninth charge was improper. It tells the jury, as a matter of law, that the defendant was entitled to a verdict, unless the jury found that it was the custom and practice on defendant's road, at the time plaintiff was hurt, for the motorman to give signals of warning and to reduce speed or stop when approaching and passing cars on the adjoining track, which were standing or moving. This would give defendant a license to go on violating the dictates of common prudence, and be absolved from all responsibility for such violation.

The tenth charge scarcely needs argument to condemn it. Under it, as counsel for appellee well says, the jury would have been compelled to find for defendant, although the plaintiff was a passenger, and got off the car six inches before it stopped at the station, and while it was moving very slowly, scarcely perceptibly, although the motorman saw plaintiff's danger in time to avoid it by the exercise of diligence after discovering his peril. There is no such issue in the case as a violation of custom. It is one of negligence vel non. The plaintiff is not complaining of the violation of the custom, but of negligence of which custom and its violation are merely evidence.

Charge 11 is involved and misleading, and for that reason was properly refused.

The twelfth, thirteenth, fourteenth and fifteenth charges were mere general charges under counts 1, 2 and 3 of the complaint, and, from what has been said, there was no room for such instructions.

The sixteenth charge was also properly refused. The charge is not that defendant, but its servants, were

guilty of wanton or intentional negligence.—*City Delivery Co. v. Henry,* 139 Ala. 161, 34 South. 389.

Wantonness consists,. as we have defined it, in consciousness on the part of the person charged with it, from his knowledge of existing circumstances and conditions, and that his conduct will probably result in injury, and yet, with reckless indifference or disregard of the natural or probable consequences, but without intention to inflict injury, he does or fails to do the act.— *L. & N. R. R. Co. v. Anchors,* 114 Ala. 492, 22 South. 279, 62 Am. St. Rep. 116.

The second count, on which issue was taken, charges wantonness.

It was open to the jury to find under the evidence, that defendant's servant was guilty of wantonness. He ran into the station at a rapid rate of speed, with the situation known to the motorman. To run a car as he did this one, according to the tendencies of the evidence, would support the charge of wantonness.—*B. R. L. & P. Co. v. Oldham,* 141 Ala. 200, 37 Southt. 452.

The seventeenth charge does not predicate how far east of the regular stopping place it was when plaintiff was injured. In this respect it was too indefinite. It might have been an inch or foot or many feet. This did not exempt the defendant from liability under the evidence.

Charge 18 does not distinguish between the passenger car moving rapidly or barely moving. A passenger may alight from a slowly moving street car. A passenger car, within a very short distance of the station is likely to be discharging passengers, and it would be culpable negligence for another car operated by the same company upon the same highway, to run at a full or very rapid speed. The nineteenth charge is subject to the same infirmity.

That disposes of the assignments of error insisted on. No error appearing, the judgment below is affirmed.
Affirmed.

TYSON, C. J., and SIMPSON and DENSON, JJ., concur.